# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| YANDISLEY MARTINEZ REYES,<br><br>    Plaintiff,<br><br>v.<br><br>SAFETY HOLDINGS, INC. d/b/a<br>SAMBASAFETY,<br><br>    Defendant. | Case No. 3:26-cv-00287<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Yandisley Martinez Reyes ("Plaintiff" or "Mr. Reyes") by and through his counsel brings the following Complaint against Safety Holdings, INC., d/b/a SambaSafety US ("Defendant" or "SambaSafety") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an background check report, specifically a Driver Record Report, that Defendant published to Uber, which falsely portrayed violation for driving without a license (which had been deleted from the public records and dismissed), making him ineligible to work for Uber as an Uber driver.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to users of such reports including, but not limited to, Uber, who use the reports to make decisions regarding whether to engage in a business transaction with certain consumers.

Case 3:26-cv-00287-SCR-WCM   Document 1   Filed 04/14/26   Page 1 of 15

3. Defendant falsely reported to Uber that Plaintiff had a conviction on his driving record for driving without a license, making him ineligible to work for Uber. Defendant's reporting is grossly inaccurate and untrue.

4. This conviction for driving without a license was not on Plaintiff's public record when Uber requested the MVR from Defendant.

5. Uber suspended/deactivated Plaintiff's Uber account after receiving a background check report from Defendant, which erroneously reported that Plaintiff had a conviction for driving without a license.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available Department of Motor Vehicle ("DMV") records from North Carolina prior to publishing Plaintiff's report to his employer, Uber.

7. Had Defendant performed even a cursory review of the DMV records, it would have discovered that this conviction was not listed on his DMV report. It had been deleted and dismissed on or about July 23, 2025 by court order.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective or current employers with inaccurate motor vehicle record information.

10. Defendant's inaccurate report cost Plaintiff a good paying, flexible job and necessary additional income for his family.

2

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the deleted conviction for driving without a license - was inaccurate and should be corrected in the subject consumer report, in violation of the FCRA, 15 U.S.C. § 1681i.

**PARTIES**

13. Yandisley Martinez Reyes ("Plaintiff" or "Mr. Reyes") is a natural person residing in Charlotte, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Safety Holdings, INC., d/b/a Sambasafety US G&M Hire Enterprises, LLC d/b/a AtBackgrounds ("Defendant" or "SambaSafety") is a Delaware corporation doing business throughout the United States, including the State of North Carolina and in this District, and has a principal place of business located at 8801 Horizon Blvd NE, Suite 200 , Albuquerque, NM 87113 and can be served at its registered agent at CT Corporation System, 206 S. Coronado Ave., Espanola, NM 87532.

3

15. Among other things, Defendant sells background check reports, including Driver Record Reports, to online service platforms like Uber for their use in deciding whether to offer its platform and range of services to potential consumers looking to offer its services, such as in this case, transportation services.

16. These reports are provided for the purpose of evaluating a consumer for employment such that they may offer their driving services on the Uber platform to earn income.

17. Further, these reports are also provided in connection with a business transaction initiated by the consumer.

18. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## STATUTORY BACKGROUND

21. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such

4

as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

23. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR BUSINESS TRANSACTIONS

25. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

26. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

5

29. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

31. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

32. As summarized in a recent report by the Consumer Financial Protection Bureau, a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.

33. The background check industry takes in revenues in excess of three billion dollars, annually.

34. Background checks are generally created by running automated searches through giant databases of aggregated public record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying records are rarely directly reviewed in creating background checks.

35. Background check companies, like Defendant, collect, among other things, countless motor vehicle records ("MVR") from a number of sources with data from county, state, and federal level sources.

36. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39. Defendant charges its customers the same price for reports that are grossly inaccurate, as it does for accurate reports.

40. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting that Plaintiff had a conviction for driving without a license, but that the conviction had been deleted from his MVR.

41. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies to Work for Uber

42. In or around November 2025, Plaintiff applied to work with Uber as a driver. Plaintiff was looking to work for Uber on a full-time basis as he currently has a very limited source of income working only 2-3 days a week as a cleaner in a barbershop.

43. As part of the application process, Plaintiff provided all his information to Uber and gave Uber permission to pull his MVR from Defendant SambaSafety.

**Defendant's Inaccurate Consumer Report is Sent to Uber**

44. On November 17, 2025, Uber ordered an MVR about Plaintiff from Defendant SambaSafety.

45. On November 17, 2025, SambaSafety published Plaintiff's MVR to Uber. In this report, SambaSafety reported a conviction as follows:

| Violations/Convictions | | | | | Failures To Appear | | Accidents | | |
|---|---|---|---|---|---|---|---|---|---|
| TYPE VIOL | CONV | ACD | AVD | V/C | DESCRIPTION | C SPEED | LOCATION/TICKET | ACCIDENT | PT |
| *13 01/03/24 | 05/15/24 | B51 | DB13 | 302 | DRIVING NO OPERATOR LICENSE | | MECKLENBURG/C5209183 | | 3 |

46. In or about January 2024, Plaintiff was charged with driving without a license. Plaintiff was initially convicted on May 16, 2024. However, on July 16, 2025, Plaintiff filed a Motion for Appropriate Relief, which was granted by the court.

47. Upon information and belief, the conviction for driving without a license was deleted on or about July 23, 2025 from Plaintiff's driving record and the case was dismissed on July 24, 2025.

48. The consumer report Defendant therefore provided to Uber was grossly inaccurate at its base. At the time of the report in November 2025, Plaintiff's MVR did not reflect any.

**Plaintiff Disputes his Consumer Report with Defendant**

49. When Plaintiff saw the conviction on his SambaSafety report, he was shocked and embarrassed.

50. Accordingly, on December 1, 2025, Plaintiff obtained a copy of his driving record from the North Carolina DMV (below), which showed no violations.

8

```
                    *** DRIVER LICENSE STATUS:CLS C ACTIVE ***
                LIC                                          LMT  COND
CLASS    GRP    TYP   ISSUE DT  EXPIR DT   CDL   DISQ PROB PRIV RESTR STATUS
C               O     05-23-2025 05-28-2033  N    N    N    N    N    ACTIVE
ENDORSEMENTS:
RESTRICTIONS:*9   LGPR EXPR:05/28/2033
CRD TRNS: 0041028394
                NO VIOLATIONS/SUSPENSIONS FOUND FOR THIS CUSTOMER

OUT-OF-STATE

WITHDRAWALS
NO WITHDRAWAL DATA TO REPORT

CONVICTIONS
NO CONVICTION DATA TO REPORT

ACCIDENTS
NO ACCIDENT DATA TO REPORT

                * * END OF DRIVING RECORD * *
```

51.     After obtaining a copy of his driving record, Plaintiff reached out to SambaSafety to dispute the report in or around December 2025. However, Plaintiff never received a response from SambaSafety regarding his first dispute.

**Plaintiff Contacts Defendant about the December 2025 Dispute**

52.     Having received no dispute response, Plaintiff followed up with SambaSafety on January 13, 2026 about his December 2025 dispute.

53.     On January 14, 2026, SambaSafety responded and provided links directing Plaintiff on how to obtain a copy of his report and how to dispute it.

**Plaintiff's January 14, 2026 Dispute to SambaSafety**

54.     On January 14, 2026, Plaintiff requested a copy of his report and disputed the information with SambaSafety.

55.     In his dispute, Plaintiff explained the facts of his conviction and its dismissal and attached both a copy of his driver's license and North Carolina DMV report showing that no violations were associated with his license or name.

9

56. Plaintiff never received a response from SambaSafety regarding his January 14, 2026 dispute.

**Plaintiff Requests Another Report from Defendant**

57. Again, as Defendant failed to respond to Plaintiff's disputes, on March 5, 2026, Plaintiff requested a copy of his updated report from SambaSafety.

58. On March 10, 2026, Plaintiff received a copy of his report and SambaSafety continued reporting the inaccurate violation within it.

**The Results of Defendant's Failures**

59. Upon information and belief, Defendant SambaSafety continues to this day to report a deleted, dismissed conviction on Plaintiff's motor vehicle report which has resulted in his inability to get a job with Uber.

60. Plaintiff has been without a substantial job for the past 4 months. His only source of income is a cleaner position at a local barbershop, where he works about 2-3 days a week.

61. Plaintiff's family depends on him, and he is extremely stressed because he is unable to provide for them.

62. The status of Plaintiff's conviction for driving without a license reported by Defendant is completely inaccurate.

63. Plaintiff has an active driver's license with no violations as this conviction was deleted by court order on July 23, 2025, nearly six months prior to SambaSafety's original report publication to Uber.

64. A cursory review of the widely available motor vehicle records confirms that this conviction **does not exist on Plaintiff's record.**

65. The sole reason the inaccurate conviction was reported on the consumer report concerning Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Uber.

66. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff's conviction had been removed entirely and did not exist on his North Carolina DMV record.

67. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Uber inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

68. Defendant's failure to conduct reasonable investigations of Plaintiff's disputes was a violation of 15 U.S.C. § 1681i.

69. But for Defendant's inaccurate consumer report, Plaintiff could have worked as an Uber driver, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

70. Defendant's false report cost Plaintiff a well-paying, flexible job and ability to earn income through the Uber platform – income sorely needed.

71. Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts, as of the date hereof, Plaintiff has missed out on months of income from Uber.

72. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law,

11

Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

73. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

74. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

75. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

76. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

77. At all times pertinent hereto, the above-mentioned MVR Report or consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

78. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

79. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

12

benefits; loss of economic opportunities; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

80.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

82.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

83.     The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

84.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

85. On at least one occasion during 2025 and/or 2026, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct the inaccurate information in the consumer report that is patently inaccurate, misleading, and highly damaging to him.

86. In response to Plaintiff's disputes, Defendant failed to conduct reinvestigations, or such investigations were so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the consumer reports and refused to correct the consumer reports at issue.

87. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject consumer report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and/or by relying upon verification from a source it has reason to know is unreliable.

88. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

89. Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

14

90.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a.  Determining that Defendant negligently and/or willfully violated the FCRA;

b.  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

d.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 14th of April 2026.

By: */s/ Dawn McCraw*
Dawn McCraw, NC Bar No. 54714
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, AZ 85258
T: 602.807.1527
F: (480) 613-7733
E: dmccraw@consumerjustice.com

*Counsel for Plaintiff*
*Yandisley Martinez Reyes*